UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| DESERT SUN ENTERPRISES LIMITED,<br><br>Plaintiff,<br><br>v.<br><br>INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL UNION, *et al*.,<br><br>Defendants. | Case No. 2:13-cv-01885-RFB-NJK<br><br>**ORDER** |

## I.      INTRODUCTION

Plaintiff Desert Sun, a Nevada company, brings this action under Section 303 of the Labor Management Relations Act (LMRA) for Defendants' alleged illegal secondary boycott activities in violation of 29 USC § 158(b)(4) and to recover damages for such boycott. The parties involved are: Plaintiff, Desert Sun Enterprises Limited d/b/a Conventional Technical Services (CTS); Defendant International Brotherhood of Electrical Workers Local Union 357 (Local 357); International Brotherhood Of Teamsters Local 631 (Local 631); and Southern Nevada Building and Construction Trades Council (Trades Council). The remaining Defendant before the Court is International Brotherhood of Electrical Workers Local Union 357 (Defendant).

Currently pending before the Court are Plaintiff's and Defendant's Motions for summary Judgment. ECF Nos. 43 and 51. For the reasons discussed below, Defendant's Motion is granted and Plaintiff's Motion is denied.

/ / /

/ / /

## II. BACKGROUND

### A. Procedural History

This case was filed on October 15, 2013 against three defendants: 1) International Brotherhood of Electrical Workers Local Union 357; 2) International Brotherhood Of Teamsters Local 631; and 3) Southern Nevada Building and Construction Trades Council. ECF No. 1. An Amended Complaint was filed October 22, 2013. ECF No. 5.

A Motion to Dismiss was filed on November 18, 2013 by Defendant Southern Nevada Building and Construction Trades Council. ECF No. 13.

The Court entered a Scheduling Order on January 7, 2014. ECF No. 36. Discovery was due by May 17, 2014.

On February 11, 2014, the Plaintiff entered a stipulation of dismissal with prejudice as to 1) Local 631 and 2) Trades Council. ECF No. 40. The remaining defendant is therefore Local 357 (Defendant).

On June 6, 2014, Plaintiff filed a Motion for Summary Judgment. ECF No. 43.

On July 10, 2014, Defendant filed a Counter-Motion for Summary Judgment. ECF No. 51.

On January 23, 2015, this Court denied Defendant's Motion to Dismiss. ECF No. 60.

On May 18, 2015, the Plaintiff filed a Motion for leave to file additional exhibits regarding Defendant's Motion for Summary Judgment. ECF No. 61.

On March 30, 2016, the Court held a hearing regarding the Motions for Summary Judgment and Motion for Leave to File. ECF No. 67. The Court granted Plaintiff's Motion for Leave to File and took the remaining Motions for Summary Judgment under submission. Id. On March 31, 2016, the Court issued a minute order granting Defendant's Motion for Summary Judgment.

### B. Undisputed Facts

The Court incorporates its undisputed and disputed facts stated on the record at the March 30, 2016 hearing. The Court summarizes the undisputed facts below.

Plaintiff CTS performs work for participants in convention and trade shows in Las Vegas. Plaintiff has and had a collective bargaining agreement with International Union of Operating Engineers, Local 501 (IUOE 501). Fern Exposition Services (Fern), the official general services

contractor for the ABC Kids Expo, contracted with Plaintiff to perform portable electric power work for the Expo on October 15-18, 2013 at the LV Convention Center (LVCC).

On October 9, 2013, Max Carter, Assistant Business Manager of Local 357 reported to Al Davis, Business Manager and Financial Secretary of Local 357, that Plaintiff was on the Expo at the LVCC. Davis told Carter to get a strike sanction against Plaintiff for failure to pay area standard wages and benefits. The Trades Council sent its approval of a strikes sanction against Plaintiff to Carter of Local 357. The letter requesting the strike sanctions stated the sanction was against Plaintiff for not paying area standards. Local 357's strike sanction request letter and the Trade Council's approval did not inform anyone that if Local 357 established a picket line, it would comply with Moore Dry Dock standards. Local 357 copied the letter to the Las Vegas Convention and Visitors Authority (LVCVA).

On October 9, 2013, Fern, the Expo show, and Plaintiff determined that IUOE workers should be replaced to avoid a strike. The IUOE employees were replaced by Local 357-dispatched employees employed by Freeman under its collective bargaining agreement with Local 357. At no time did Local 357 direct Plaintiff to hire Freeman. After Freeman was hired, Local 357 did not setup an area standards picket.

### III. LEGAL STANDARD

#### A. Summary Judgment

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In ruling on a motion for summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Johnson v. Poway Unified Sch. Dist., 658 F.3d 954, 960 (9th Cir. 2011).

Where the party seeking summary judgment does not have the ultimate burden of persuasion at trial, it "has both the initial burden of production and the ultimate burden of

persuasion on a motion for summary judgment." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc., 210 F.3d 1099, 1102 (9th Cir. 2000). "In order to carry its [initial] burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." Id. If the movant has carried its initial burden, "the nonmoving party must produce evidence to support its claim or defense." Id. at 1103. In doing so, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted). However, the ultimate burden of persuasion on a motion for summary judgment rests with the moving party, who must convince the court that no genuine issue of material fact exists. Nissan Fire, 210 F.3d at 1102.

### B. Unlawful secondary boycott under 29 USC 158(b)(4)

"Section 303 prohibits, through cross-reference to 29 U.S.C. § 158, labor organizations or their agents from 'threaten[ing], coerc[ing], or restrain[ing] any person engaged in commerce or in an industry affecting commerce, where ... an object thereof is ... forcing or requiring any person to ... cease doing business with any other person.' These are known as 'secondary boycott activities,' since they are directed at parties who are not involved in the labor dispute, as opposed to primary boycott activities in which a union pressures an employer to change its behavior. The gravamen of a secondary boycott is that its sanctions bear, not upon the employer who alone is a party to the dispute, but upon some third party who has no concern in it. Its aim is to compel him to stop business with the employer in the hope that this will induce the employer to give in to his employees' demands." Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am., 768 F.3d 938, 943-44 (9th Cir. 2014) (internal quotations and citations omitted).

Section 8(b)(4) of the National Labor Relations Act defines a secondary boycott as an unfair labor practice. According to Section 8(b)(4), a union may not use or threaten to use economic pressure against a neutral, or "secondary," employer with the goal of getting the

secondary employer to cease doing business with the "primary" employer--the employer with whom the union has a dispute. N.L.R.B. v. Ironworkers Local 433, 850 F.2d 551, 554 (9th Cir. 1988).

Distinguishing between legitimate primary and unlawful secondary activity is relatively easy to draw where primary and secondary employers have separate work sites. Whether a boycott is primary or secondary becomes less clear where, as here, the site for the prospective picket is shared by both the primary and secondary employer. In these "common situs" cases, a court may consider the four criteria originally set forth in Moore Dry Dock to help determine whether a union has the proscribed motive of enmeshing neutral employers: "(1) The picketing is strictly limited to times when the situs of the dispute is located on the secondary employer's premises; (2) At the time of the picketing the primary employer is engaged in its normal business at the situs; (3) The picketing is limited to places reasonably close to the location of the situs; and (4) The picketing discloses clearly that the dispute is with the primary employer." Ironworkers Local 433, 850 F.2d at 554 (citing Moore Dry Dock, 92 N.R.L.B. 547, 549 (1950)).  The ultimate inquiry is whether "the totality of the circumstances demonstrate[s] impermissible secondary intent (or lack of it)." Id. at 554. Thus, "[l]iteral compliance (or failure to comply) with the Moore Dry Dock standards does not preclude (or establish) a § 8(b)(4) violation . . . if the district court determines that the totality of the circumstances demonstrate impermissible secondary intent (or lack of it)." Constar, Inc. v. Plumbers Local 447, 748 F.2d 520, 522 (9th Cir. 1984).

**IV.   DISCUSSION**

        **A.  Whether actual picketing must have occurred for a section 8(b)(4) violation**

First, Defendant argues that because no actual picketing occurred, there can be no section 8(b)(4) violation. The Court disagrees. Section 8(b)(4) prohibits labor organizations "(ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof… (B) forcing or requiring any person to cease using, selling, handling . . . or otherwise dealing in the products of any other producer . . . or to cease doing business with any person[.]" 29 U.S.C. § 158(b)(4)(ii). "A union cannot use, or *threaten to use*,

1  economic pressure against an employer with whom the union does not have a dispute for the
2  purpose of getting the 'secondary' employer to stop doing business with the 'primary' employer-
3  the employer with whom the union does have a dispute." N.L.R.B. v. Ironworkers Local 433, 850
4  F.2d 551, 554 (9th Cir. 1988) (emphasis added).

5  Defendant points to no binding precedent in support of its position that, for an 8(b)(4)
6  violation to occur, there must have been an actual picket, strike, or boycott. Defendant merely
7  states that boycotting is a specific mode of communication. Defendant then cites to an NLRB case
8  that states that actions less than picketing do not constitute unlawful secondary activity under
9  8(b)(4). Further, the Court finds that the 8(b)(4) expressly prohibits engagement in picketing as
10 well as threatening such activity under subsection (ii). Therefore, the Court finds that the language
11 of the statute provides for recourse where pickets are threatened. The Court rejects Defendant's
12 first argument.

**B.  Whether the threat of a picket was primary or secondary**

14 The Court turns to whether the threat of a picket in this case was primary, which is
15 permissible, or secondary, which is impermissible under Section 8(b)(4). "Sailors' Union of the
16 Pac. (Moore Dry Dock Co.), 92 N.L.R.B. 547 (1950) established a four-part test to determine
17 whether picketing at a common situs is primary or secondary: (a) whether the picketing is strictly
18 limited to times when the situs of dispute is located on the secondary employer's premises; (b)
19 whether the primary employer is engaged in its normal business at the situs; (c) whether the
20 picketing takes place reasonably close to the situs ; and (d) whether the picketing discloses clearly
21 that the dispute is with the primary employer." Iron Workers Dist. Council of Pac. Nw. v. N.L.R.B.,
22 913 F.2d 1470, 1475 (9th Cir. 1990) (internal quotation marks omitted).

23 Plaintiff argues that Defendant admits that the motive in threatening a picket was
24 secondary. Namely, Davis, Business Manager and Financial Secretary of Local 357, stated that his
25 "objective was to organize all of the work and all of the workers in Local 357's jurisdiction because
26 all electrical work should be done by the IBEW." Pl.'s MSJ, Ex. 1, Davis Depo. at 41. However,
27 taken in context, Davis states that while the general objective of the Union is to organize work in
28 the electrical industries, the union recognizes rules such as "you don't go and try to organize

1  employees that are already organized." Id. at 42.  The Court understands these statements to be
2  reflective of a general intent or goal to organize as many workers as possible in the region, rather
3  than a statement targeting Plaintiff specifically. Plaintiff provides no further argument as to why
4  Defendant's actions constitute a secondary boycott.

5  Defendant argues that Plaintiff fails to address the relevant standard for whether the picket
6  constitutes a primary or secondary picket under Moore Dry Dock, and that the picket would
7  comply with Moore's standards because Defendant's picket would have been a picket of CTS,
8  which is the primary employer for the following reasons: 1) the picket would have been setup
9  outside the LVCC where CTS would have been performing work; 2) CTS was engaged in its
10  normal business at LVCC because it performs electrical service work for trade shows and
11  conventions; and 3) any picketing that would have occurred would have been reasonably close to
12  the situs. Defendant also argues that the picket was not a secondary boycott because it expressly
13  stated in its letter that its dispute was with the primary employer, Plaintiff.

14  Last, Defendant argues that it is entitled to summary judgment because the strike sanction
15  letter it sent to the LVCVA, which stated its intent to strike Plaintiff for allegedly paying below
16  area standard wages, was not a violation of LMRA Section 303. See D's MSJ, Ex. C. "[A]n
17  unqualified threat to picket a *jobsite* alone does not constitute a violation of the Act's secondary
18  boycott provisions." United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus.
19  of U.S. & Canada, Local 32, AFL-CIO v. N.L.R.B., 912 F.2d 1108, 1111 (9th Cir. 1990) (emphasis
20  added). In United Ass'n of Journeymen, the Ninth Circuit found no violation where a letter to a
21  secondary employer threatened to picket a jobsite, as opposed to a specific employer or party. In
22  Local 433, the Court similarly held it is not a violation of 8(b)(4) to "inform[] secondary employers
23  of, or "threaten[]" them with, picketing of primary employers, including primary employers
24  scheduled to work at a common situs." N.L.R.B. v. Ironworkers Local 433, 850 F.2d 551, 555 (9th
25  Cir. 1988).  "The primary question is not whether particular words were used, or a disclaimer
26  issued, but how, given the context of the conversation, the union's statements should reasonably
27  be understood." Id. at 557. Ironworkers Local 433 similarly found no federal violation and would
28  not presume that the picket would be unlawful.

1    In the instant case, Plaintiff has not established that the LVCVA is a secondary employer
2 and the Court does not find that LVCVA is a secondary employer. In its own stipulation of facts
3 in its Motion for Summary Judgment, Plaintiff merely states that the LVCVA manages the LVCC,
4 but not that it employs Plaintiff or Plaintiff's employees.  Rather, the parties stipulate that Fern,
5 the official general services contractor for the Expo, hired Plaintiff. See Pl.'s MSJ, Ex. 2 at 1. Even
6 assuming LVCVA were a secondary employer, the Defendant's actions do not establish a
7 secondary picket; Plaintiff merely argues that Defendant sent a copy of its strike sanction letter to
8 the LVCVA. In this letter, Defendant requests a strike sanction against CTS for "any and all jobs
9 because of not paying area standards." D's MSJ, Ex. C. Defendant argues the purpose of sending
10 LVCVA the letter was 1) to provide notice to the LVCVA security force of a potential picket and
11 2) some LVCVA board members had specifically requested this information. The Court does not
12 find that Plaintiff has rebutted this evidence with contrary persuasive evidence of its own. D's
13 MSJ, Ex B at 34, 83.

14    The Court applies the reasoning in Local 32 and Local 433, where threats of picketing—
15 but not actual picketing—were sent to secondary employers in the form of letters. The       Court
16 finds that, as in those two cases, Defendant's forwarding letters to LVCVA to inform it of a
17 potential strike against Plaintiff specifically for area pay standard violations does not constitute an
18 8(b)(4) violation, even if LVCVA were a secondary employer. In both aforementioned cases, the
19 Ninth Circuit declined to find a violation where the facts were more favorable than they are here.

20    In Local 32, the Defendants threatened to picket the "jobsite." United Ass'n of Journeymen
21 & Apprentices of Plumbing & Pipefitting Indus. of U.S. & Canada, Local 32, AFL-CIO v.
22 N.L.R.B., 912 F.2d 1108, 1109 (9th Cir. 1990).  In contrast, here, Defendant threatened to picket
23 Plaintiff specifically, and identified Plaintiff by name in the letter. The Ninth Circuit's holding in
24 Local 32 supports the finding that Defendant's activity is primary, rather than secondary: "[t]he
25 Union could have lawfully picketed Chapman Mechanical, the primary employer, at the Ramada
26 jobsite, as long as the picketing was primary in nature. There is nothing in the letter that justifies
27 a presumption that the Union would not honor a reserve gate system, which is normally established
28 at a common situs." Id. at 1110. The Circuit further stated that "[t]he Union's reference to Ramada

as the 'battlefield' does not imply that the Union's picketing of the Ramada jobsite would be unlawful. As the common situs in the Union's dispute with Chapman Mechanical, the Ramada jobsite would, indeed, have been the prime location upon which the Union based its fight with Chapman Mechanical, the primary employer. In short, there is nothing in the letter which would permit a conclusion that the Union's picketing would be unlawful." Id. at 1110-11.

The Court finds similarly in this case that there is not disputed or undisputed facts which would indicate that the proposed picket would be unlawful.  There is nothing in the letter that would permit a conclusion that the picketing would be unlawful.  The primary fact that the Plaintiff relies upon for its position is the letter copied to the LVCC.  However, as the Ninth Circuit held in Local 433, it is not illegal under 8(b)(4) to "inform[] secondary employers of, or 'threaten[]' them with picketing of primary employers, including primary employers scheduled to work at a common situs." N.L.R.B. v. Ironworkers Local 433, 850 F.2d 551, 555 (9th Cir. 1988). Again, even assuming that LVCVA were a secondary employer, the letter expressly states it will picket Plaintiff, the primary lawyer, at the common situs of the LVCC. Therefore, under the rationale and holding of Local 433, Defendant's threatened picket is also lawful.  Plaintiff has not pointed to any other disputed or undisputed facts which would indicate that the threatened picket would have been unlawful.

In light of this Ninth Circuit precedent, the Court finds that the letters sent by Defendant to LVCVA do not violate section 8(b)(4) and that the threats were threats to engage in primary, and not secondary, picketing. The Court therefore GRANTS Defendant's Motion for Summary Judgment.

In light of this ruling, the Court does not address the question of whether Defendant had an unlawful motive, or Plaintiff's additional arguments as to whether Defendant investigated the area standard or whether Defendant failed to conduct a reasonable investigation of Plaintiff's wage and benefits packages.

/ / /

/ / /

/ / /

## V.  CONCLUSION

For the reasons discussed above,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment is GRANTED. ECF No. 51.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment is DENIED. ECF No. 43.

**DATED**: December 16, 2016.

_____
**RICHARD F. BOULWARE, II**
**United States District Judge**